IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH A. SHERMAN,

      Petitioner,                      No. CIV S-06-0018 FCD CHS P

   vs.

YOLO COUNTY SHERIFF, et al.,

      Respondents.               FINDINGS AND RECOMMENDATIONS

      Petitioner Joseph A. Sherman is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner attacks his September 3, 2005 conviction in Yolo County Municipal Court, Case No. 04-3801, for intentional interference with a business. Petitioner raises the following claims: (1) insufficient evidence; (2) violation of right to a speedy trial; (3) improper exclusion of evidence; (4) improper exclusion of jury instructions; (5) illegal seizure; (6) unjust prosecution; (7) invidious discrimination; and (8) violation of due process. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's petition for habeas corpus relief be denied.

/////

FACTUAL AND PROCEDURAL BACKGROUND[1]

Around noon on May 26, 2004, Billy McLain, the Maintenance Supervisor for the Marketplace in Davis saw a man, later identified as Joseph Arch Sherman, stopping customers who were trying to enter Longs Drugs, possibly soliciting literature to them, and forcing customers to go around him in order to enter the store. Mr. McLain is a representative of the property management company who also owns the property on which Longs Drugs is located. Since the property management company has a policy against solicitation on the property, McLain approached Sherman and asked what he was doing. Sherman replied by asking Mr. McLain if he "had a minute," and then started talking about religion. Mr. McLain observed the defendant stepping in front of customers in front of the store enterance, forcing the customers to go around the defendant in order to enter Longs.

At this point, McLain called Susie Pennington, the Assistant Property Manager, and explained there was a man on the property in front of Longs Drugs who was stopping customers as they tried to enter the store. Ms. Pennington instructed McLain to ask Sherman to stop soliciting and bothering customers or leave the property.

While on the phone with Ms. Pennington, McLain observed the defendant stopping a male customer in front of the store enterance who was trying to enter Longs Drugs. The customer became very angry with Sherman, and they appeared to have become verbally combative. The customer had to walk around Sherman in order to enter the store.

Mr. McLain approached Sherman again, explained he was a representative of the management company, and informed Sherman of the property's anti-solicitation policy. Mr. McLain asked Sherman to stop harassing the patrons or leave the property. Sherman replied by saying, "No, it's a free country. I don't have to leave," and started getting abusive towards Mr. McLain, shouting things like "You lose! You're going to jail for 49 years." Mr. McLain tried to explain to Sherman that he was free to solicit people on public property, which began at the end of the parking lot. The parties stipulate to the fact that the manager of Longs Drugs, John Eibenstein, told Sherman that on May 26, 2004, Sherman could pass out literature outside of Longs Drugs, so long as Sherman did not stand in front of the door or block the entrance in any way or harass customers.

Mr. McLain called Ms. Pennington for the second time to explain what had happened, and was told to ask Sherman to leave again. The previously mentioned customer was now exiting the

---

[1] The facts are taken from the Settled Statement On Appeal, Lodged Doc. No. 1 at 115-120, which was ordered settled and certified by the trial court on August 2, 2005. Id. at 121. The Settled Statement on Appeal has been provided, and no trial transcripts are available, pursuant to California Rules of Court, Rule 187.5. Lodged Doc. No. 1 at 107-08.

> store, and McLain asked if Sherman was bothering him. The customer became very angry and and retorted to Sherman, "No, I'm bothering him."
> At Ms. Pennington's request, McLain tried to reason with Sherman again, but Sherman immediately became verbally hostile towards McLain and refused to leave. Mr. McLain made several other attempts to speak with Sherman, but each attempt was halted by Sherman's verbally agressive behavior, threatening that McLain would spend 49 years in jail.
> Mr. McLain called Ms. Pennington for the third time, and since there were no signs that the situation was improving, Ms. Pennington called the police. Officer Edens of the Davis Police Department arrived on the scene at approximately12:15 P.M., and notified Sherman, standing in front of Longs Drugs, aggressively preaching and soliciting Bible materials to people entering and exiting the store.
> Sherman began shouting at Officer Edens as soon as the officer made contact with him. Officer Edens tried to reason with Sherman several times and tried to explain the nature of the situation, but Sherman kept yelling at the officer, making it hard to communicate at all. Due to the defendant's agressive behavior and hostility towards the police officers (sic) while standing in front of Longs, customers had to walk around the defendant in order to enter and exit the store.
> Officer Edens then decided to detain Sherman in handcuffs for officer safety reasons, since Sherman was showing signs of hostility, and because Officer Edens was unable to conduct his investigation as a result of Sherman's hostility. Once Sherman calmed down, Officer Edens tried to explain several times that the property management wised for him to leave the area because he was in violation of their solicitation policy. Officer Edens also tried to reach an agreement with Sherman by stating Sherman could solicit at the end of the parking lot, off the property grounds. Sherman continued to be verbally combative and non-responsive to Officer Edens requests, stating that he would not leave under any circumstances.
> Office Edens next explained to Sherman several times that he would be placed under citizens arrest if he failed to leave. However, each attempt was unsuccessful as Sherman kept shouting that he would not leave. Sherman was becoming increasingly upset and shouting so loud that his voice was becoming hoarse.
> Sergeant Doroshov of the Davis Police Department arrived on the scene to assist Officer Edens. Sergeant Doroshov was also unsuccessful in trying to reason with Sherman, and Sherman repeatedly told him that he would not leave the property. Sherman was placed under citizens arrest.

Petitioner was convicted on September 3, 2004, by a jury, of one count of intentionally interfering with a business, a misdemeanor, under California Penal Code § 602.1(a). Lodged

1  Doc. No. 1 at 135.  Petitioner appealed this conviction to the Appellate Division of the Yolo
2  County Superior Court on September 15, 2004.  Id. at 82.  Petitioner also sought review from
3  the California Court of Appeal on September 20, 2005.  Lodged Doc. No. 2 at 1.  That court
4  denied that petition on September 29, 2005, citing In re Hillery.  Lodged Doc. No. 3 at 1.
5  Petitioner then petitioned the California Supreme Court on October 7, 2005.  Lodged Doc. No. 4
6  at 1.  That court denied that petition on November 2, 2005, citing In re Dixon.  Lodged Doc. No.
7  5 at 1.  Petitioner filed this habeas petition on January 4, 2006.

## ANALYSIS

A.  Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

/////

B.   Petitioner's Claims[2]

    I.   Insufficient Evidence

Petitioner claims that there was insufficient evidence to sustain his conviction. Specifically, petitioner claims that "there was no evidence of wrongdoing at all on [petitioner's] part. . . . The record of evidence furthermore cannot possibly support a finding of guilt beyond a reasonable doubt." Petition at 10. Respondent argues that a rational trier of fact could have

---

[2] Respondent claims that petitioner's claims are procedurally barred. Answer at 10. A reviewing court need not invariably resolve the question of procedural default prior to ruling on the merits of a claim where the issue of procedural default turns on difficult questions of state law. Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004). Under the circumstances presented here, this court finds that petitioner's claims can be resolved more easily by addressing them on the merits. Accordingly, this court will assume that petitioner's claims are not procedurally defaulted.

5

found petitioner's guilt beyond a reasonable doubt based on the evidence presented. Answer at 21.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Prantil v. State of Cal., 843 F.2d 314, 316 (9th Cir. 1988). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant the writ, the federal habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275 & n.13.

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings.[3] Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443

---

[3] Under California Rules of Court, Rule 187.5, when only sound recordings are available, a party appealing a misdemeanor, shall proceed by way of a settled statement. The record received in this matter consisted of the superior court documents, petitioner's petition for habeas corpus to the state appellate court, the denial of that petition by the appellate court, the petition for habeas corpus to the state supreme court, and the denial of that petition. No trial transcripts are available but a settled statement is contained in the superior court documents.

6

U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict. United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991). Thus, "[t]he question is not whether we are personally convinced beyond a reasonable doubt" but rather "whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991). The federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

Petitioner was convicted of a violation of California Penal Code § 602.1(a), obstructing or intimidating business operators or customers. § 602.1(a) states that:

> Any person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or owner's agent, is guilty of a misdemeanor, punishable by imprisonment in a county jail for up to 90 days, or by a fine of up to four hundred dollars ($400), or by both that imprisonment and fine.

Viewing the evidence in the light most favorable to the verdict, the undersigned concludes that there was sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that petitioner was guilty of violating § 602.1(a).

The evidence introduced at petitioner's trial showed that petitioner stopped customers on their way to entering Longs Drugs and refused to leave after being asked to leave by a representative of the property's owner and a police officer. Lodged Doc. No. 1 at 117. Based on these facts, a rational trier of fact could find beyond a reasonable doubt that petitioner violated § 602.1(a). Accordingly, petitioner is not entitled to habeas relief on this claim.

II.     Violation of Right to Speedy Trial

Petitioner claims that his Sixth Amendment right to a speedy trial was violated. Specifically, petitioner claims that he was arrested on May 26, 2004, and his trial did not occur until September 2, 2004. Respondent claims petitioner's argument is without merit. Answer at 22.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ." U.S. Const., Amend. VI. In assessing a speedy trial claim, the court must weigh four factors: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." Doggett v. United States, 505 U.S. 647, 651 (1992) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). See also McNeely v. Blanas, 336 F.3d 822, 826 (9th Cir. 2003); United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir. 1986). No one of these four factors alone is either a necessary or sufficient to support a finding that there has been a deprivation of the constitutional right to a speedy trial. McNeely, 336 F.3d at 826. Rather, the various factors are related and must be considered together. Barker, 407 U.S. at 533. However, "no showing of prejudice is required when the delay is great and attributable to the government." United States v. Shell, 974 F.2d 1035, 1036 (9th Cir. 1992). See also Doggett, 505 U.S. at 651 (eight and one-half year delay between indictment and trial, six of which were attributable to the government's negligence, violated a defendant's constitutional right to a speedy trial even though he could not demonstrate the delay impaired his ability to mount a successful defense).

The Supreme Court has observed:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

8

1 Barker, 407 U.S. at 530.  In this regard, depending on the nature of the charges, courts have
2 generally found post-accusation delay "presumptively prejudicial" when it begins to approach
3 one year.  Doggett, 505 U.S. at 652, n.1; see also McNeely, 336 F.3d at 826 (three-year delay
4 was presumptively prejudicial); United States v. Gregory, 322 F.3d 1157, 1162 (9th Cir. 2003)
5 (22-month delay between first superseding indictment and trial date was presumptively
6 prejudicial but did not weigh heavily in defendant's favor because it was not excessively long);
7 United States v. Aguirre, 994 F.2d 1454, 1457 (1993) (finding that "a five year delay is long
8 enough to trigger a further look," but concluding that even the five-year delay in that case did not
9 deprive the defendant of his constitutional right to a speedy trial when all the Barker v. Wingo
10 factors were balanced).

11 Petitioner's trial was delayed less than one month.  Additionally, petitioner has
12 failed to allege or demonstrate any prejudice resulting from this short delay.  Finally, and
13 perhaps most importantly, the trial was delayed because petitioner failed to appear for a trial
14 confirmation hearing.  Lodged Doc. No. 1 at 115.  Thus the delay was the fault of petitioner and,
15 therefore, petitioner is not entitled to relief on this claim.

16       III.      Improper Exclusion of Evidence

17 Petitioner claims that the trial court improperly excluded evidence.  Specifically,
18 petitioner alleges that he "made offer of proof, including Affidavit, to court demonstrating the
19 repeated violations of [petitioner's] rights by D.A. and Davis Police."  Petition at 22.  Petitioner
20 claims the evidence was "conclusive proof of the long history of kidnapings (sic) of [petitioner]
21 by the police, along with other oppression demonstrating their systematic attempts to ruin
22 [petitioner]."  Id.

23 As discussed above, the evidence offered by petitioner, even if true, is not
24 relevant to the issue at trial.  The fact that the Davis Police or District Attorney, allegedly,
25 kidnaped petitioner or violated his rights in the past, is not relevant to the charge that on May 26,
26 2004, petitioner unlawfully interfered with a business.  In light of these facts, the trial court's

9

1 refusal to admit evidence concerning the history of "repeated violations of [petitioner's] rights"
2 by the Davis Police Department and Yolo County District Attorney's Office was not arbitrary or
3 disproportionate and did not infringe upon petitioner's right to present a complete defense.
4 Accordingly, petitioner is not entitled to relief on this claim.

        IV.        <u>Improper Exclusion of Jury Instructions</u>

Petitioner claims the trial court improperly rejected petitioner's proposed jury instructions. Specifically, the court rejected his requested instructions concerning free speech and consent to enter shopping centers. (Lodged Doc. No. 1 at 73-74.)

"[A] defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence. <u>U.S. v. Crandall</u> 525 F.3d 907, 911 (9th Cir. 2008) (quoting <u>United States v. Fejes</u>, 232 F.3d 696, 702 (9th Cir.2000)). However, a state court's determination of whether a requested instruction is allowed under state law cannot form the basis for federal habeas relief. <u>Estelle</u>, 502 U.S. at 67-68; <u>see</u> <u>also</u> <u>Menendez v. Terhune</u> 422 F.3d 1012, 1029 (9th Cir. 2005). Nevertheless a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." <u>Hines v. Enomoto</u>, 658 F.2d 667, 672 (9th Cir. 1981) (citing <u>Quigg v. Crist</u>, 616 F.2d 1107 (9th Cir. 1980)); <u>See</u> <u>also</u> <u>Prantil v. California</u>, 843 F.2d 314, 317 (9th Cir. 1988) (To prevail on such a claim petitioner must demonstrate that an erroneous instruction "so infected the entire trial that the resulting conviction violates due process.") The analysis for determining whether a trial is "so infected with unfairness" as to rise to the level of a due process violation is similar to the analysis used in determining, under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993), whether an error had "a substantial and injurious effect" on the outcome. <u>See</u> <u>Thomas v. Hubbard</u>, 273 F.3d 1164, 1179 (9th Cir. 2001), <u>overruled on other grounds by</u> <u>Payton v. Woodford</u>, 299 F.3d 815, 828 n.11 (9th Cir. 2002). Where, as here, the challenge is a failure to give an instruction, the petitioner's

10

burden is "especially heavy," because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). See also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

Petitioner was convicted of intentionally interfering with a business. The trial judge instructed the jury on the elements of that offense as follows:

> Defendant is accused in Count 2 of having violated Section 602.1, subdivision (a), of the Penal Code, a misdemeanor.
>
> Any person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or the owner's agent, is guilty of a violation of Section 602.1, subdivision (a) of the Penal Code, a misdemeanor.
>
> In order to prove this crime, each of the following elements must be proved:
>
> 1. A person intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public by:
>    a. Obstructing or intimidating those attempting to carry on business, OR
>    b. Obstructing or intimidating their customers, AND
>
> 2. A person refused to leave the premises of the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or the owner's agent

Lodged Doc. No. 1 at 71.

Petitioner requested specific instructions concerning free speech and consent to enter shopping centers. Lodged Doc. No 1. at 74. The trial court rejected these requests. Id. Having reviewed the requested instructions, this court cannot say that there was any error, or that any alleged error had "a substantial and injurious effect" on the outcome of the trial.

Petitioner was charged with intentionally interfering with a business establishment. The trial judge properly issued the relevant jury instructions, including those

pertaining to the elements of the charged offense. Conversely, the jury instructions requested by petitioner were not particularly relevant to the issue at trial. Properly instructing a jury on the elements of an offense, while refusing to give requested but not particularly relevant instructions, does not have "a substantial and injurious effect" on the outcome of a trial. Thus, petitioner is not entitled to relief on this claim.

V.   Illegal Seizure

Petitioner claims that he was unlawfully seized by police officers. Specifically, petitioner claims that "Davis police unjustly seized [petitioner] while he was engaged in legitimate freedom of speech and religion" Petition at 14. Respondent claims that petitioner has not shown an entitlement to relief on this claim. Answer at 25.

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). There is no evidence before the court that petitioner did not have a full and fair opportunity to litigate a Fourth Amendment claim in state court. Accordingly, the claim is barred in this federal habeas proceeding. Stone, 428 U.S. at 494.

VI.   Unjust Prosecution

Petitioner claims that he was unjustly prosecuted. Specifically petitioner claims he was prosecuted for exercising his First Amendment rights to free speech and freedom of religion. Petition at 14.

"The protections afforded by the First Amendment, made applicable to the States by the Fourteenth Amendment, are not absolute and the government may regulate certain categories of expression consistent with the Constitution." Chaker v. Crogan, 428 F.3d 1215, 1223 (9th Cir. 2005). Additionally, "a rationally based, neutral law of general applicability does not violate the right to free exercise of religion even though the law incidentally burdens a

12

particular religious belief or practice." Miller v. Reed, 176 F.3d 1202, 1206 (9th Cir.1999) (citing Employment Div. v. Smith, 494 U.S. 872, 879 (1990)).

There is no evidence that § 602.1 is not a rationally based, neutral law of general applicability. Therefore, petitioner is not entitled to relief on this claim.

VII. Invidious Discrimination

Petitioner claims that the prosecution and trial court "committed invidious discrimination" against petitioner. Petition at 16. Specifically, petitioner claims that he "made an offer of proof of invidious discrimination to court in written affidavit and proof of invidious discrimination, testifying of the unjust, deliberate, and oppressive acts of discriminatory prosecution and misconduct of the D.A., and the kidnaping, perjury, and harassment of petitioner." Id. Respondent claims that petitioner's allegations are "a rambling, incoherent narrative." Answer at 25. While petitioner's argument is not entirely clear, the court interprets his allegations as a claim that the trial court improperly refused to admit petitioner's evidence concerning discrimination.

Criminal defendants have a constitutional right, implicit in the Sixth Amendment, to present a defense; this right is "a fundamental element of due process of law." Washington v. Texas, 388 U.S. 14, 19 (1967). See also Crane v. Kentucky, 476 U.S. 683, 687, 690 (1986); California v. Trombetta, 467 U.S. 479, 485 (1984); Webb v. Texas, 409 U.S. 95, 98 (1972). However, the constitutional right to present a defense is not absolute. Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir. 2003). "Even relevant and reliable evidence can be excluded when the state interest is strong." Perry v. Rushen, 713 F.2d 1447, 1450 (9th Cir. 1983). Thus,

> [w]here evidence has been excluded pursuant to a state evidentiary law, we use a balancing test: In weighing the importance of evidence offered by a defendant against the state's interest in exclusion, the court should consider the probative value of the evidence on the central issue; its reliability; whether it is capable of evaluation by the trier of fact; whether it is the sole evidence on the issue or merely cumulative; and whether it constitutes a major part of the attempted defense. A court must also consider the purpose of the [evidentiary] rule; its importance; how well the rule

13

> implements its purpose; and how well the purpose applies to the case at hand. The court must give due weight to the substantial state interest in preserving orderly trials, in judicial efficiency, and in excluding unreliable or prejudicial evidence.

Alcala, 334 F.3d at 877 (quoting Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985)). The exclusion of evidence pursuant to state law does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." Holmes v. South Carolina, 547 U.S. 319, 324-25 (2006) (quoting United States v. Scheffer, 523 U.S. 303, 308 (1998)). See also Crane, 476 U.S. at 689-91 (discussion of the tension between the discretion of state courts to exclude evidence at trial and the federal constitutional right to "present a complete defense"); Greene v. Lambert, 288 F.3d 1081, 1090 (9th Cir. 2002).

Under the circumstances of this case, petitioner's right to present a defense and to a fair trial were not violated by the trial court's decision to exclude the proffered evidence. Even assuming that petitioner's claim that the District Attorney and Davis Police Department have "a vendetta against" petitioner, with a goal of running petitioner "into the gutter," "out of town, or worse" that is not relevant to determining whether or not petitioner interfered with a business on May 26, 2004. The incident at issue occurred prior to, and without the involvement of, the District Attorney or the Davis Police Department. In light of these facts, the trial court's refusal to admit evidence of discrimination on the part of the District Attorney or the Davis Police Department was not arbitrary or disproportionate and did not infringe upon petitioner's right to present a complete defense. Accordingly, petitioner is not entitled to relief on this claim.

VIII.   Violation of Due Process

Petitioner claims that the state court violated his right to due process. Specifically, petitioner alleges his appeal "was repeatedly neglected and delayed negligently by [the] court." Petition at 20.

"[E]xtreme delay in the processing of an appeal may amount to a violation of due

14

process." U.S. v. Mohawk, 20 F.3d 1480, 1485 (9th Cir. 1994) (citation omitted). "However, 'not every delay in the appeal of a case, even an inordinate one,' implicates an appellant's due process rights." Id. (citations omitted). "Four factors must be considered in evaluating claims of appellate delay: '(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant.' Id. (citations omitted.) "'The fourth inquiry is the most important: a due process violation cannot be established absent a showing of prejudice to the appellant.'" Id. (citation omitted).

Petitioner was convicted on September 3, 2004. Lodged Doc. No. 1 at 26. On September 15, 2004, petitioner filed a notice of appeal in the Superior Court of Yolo County. Id. at 82. On October 1, 2004, the Yolo County Municipal Court appointed petitioner counsel on appeal. Id. at 87. On October 18, 2004, petitioner, through counsel, filed a Proposed Statement on Appeal. Id. at 95-97. On November 17, 2004, petitioner waived counsel on appeal and proceeded to represent himself. Id. at 101.

On January 25, 2005, the Yolo County Superior Court certified the Settled Statement on Appeal. Id. at 103. On May 16, 2005, the Appellate Division of the Yolo County Superior Court, vacated the appellate hearing because California Rules of Court, rule 187.5, had not been complied with. Id. at 107-08. Petitioner was given 30 days to file a proposed statement on appeal. Id. at 108. On August 2, 2005 the Yolo County Superior Court certified the People's Proposed Settled Statement on Appeal to the Appellate Division of the Yolo County Superior Court. Id. at 121. The court provided petitioner with a copy of the certified Settled Statement on Appeal in September of 2005, before a briefing schedule was set.[4] Petition at 20.

On October 27, 2005, the Appellate Division of the Yolo County Superior Court issued a hearing date and a briefing schedule. Id. at 147. On November 30, 2005, that court

---

[4] Petitioner also alleges the court failed to provide adequate case transcripts. Petition at 20. As noted previously, under California Rules of Court, Rule 187.5, when only sound recordings are available, a party appealing a misdemeanor, shall proceed by way of a settled statement. As a result, no case transcripts are available.

15

dismissed petitioner's appeal because petitioner failed to file an opening brief in compliance with the briefing schedule Id. at 154.

Applying these facts to the four factors discussed in Mohawk, it is apparent that petitioner's due process rights were not violated.  Just over one year elapsed between the time petitioner filed his appeal and when the appeal was ultimately dismissed.  During that time the matter proceeded through the court system in a typical manner.  Further, the appeal was ultimately dismissed because petition failed to file his opening appellant brief.  Thus, petitioner bears at least some responsibility for the delay.  Finally, petitioner has not attempted to argue that the alleged delay caused him any prejudice.  As such, petitioner has not shown a violation of his due process rights and is not entitled to relief on this claim.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 6, 2008

CHARLENE H. SORRENTINO
UNITED STATES DISTRICT COURT